DISCIPLINARY COUNSEL *v.* HIGGINS.

[Cite as *Disciplinary Counsel v. Higgins,* 117 Ohio St.3d 473, 2008-Ohio-1509.]

(No. 2007–1953—Submitted January 9, 2008—Decided April 3, 2008.)

**Per Curiam.**

{¶ 1} Respondent, Brian Patricc Higgins, Attorney Registration No. 0075652, last registered address in Lakewood, Ohio, was admitted to the practice of law in Ohio in 2002. Respondent's license to practice law is currently under suspension pursuant to two separate orders. In the first order, we suspended respondent from practice as of April 8, 2005, for his failure to comply with the requirements for continuing legal education ("CLE") of Gov.Bar R. X. See *In re Higgins,* 105 Ohio St.3d 1490, 2005-Ohio-1647, 825 N.E.2d 615. Our second order suspended respondent as of December 5, 2005, for his failure to comply with the attorney-registration requirements of Gov.Bar R. VI. See *In re Higgins,* 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we now indefinitely suspend respondent's license based on findings that he continued to practice law while under suspension and that he did not cooperate in the investigation of this misconduct. We agree that respondent committed professional misconduct as found by the board and that an indefinite suspension is appropriate.

{¶ 3} Relator, Disciplinary Counsel, charged respondent with multiple violations of the Code of Professional Responsibility and with failing to cooperate in a disciplinary investigation as required by Gov.Bar R. V(4)(G). The board attempted to serve respondent with notice of the complaint by certified mail at the address on file with this court's Attorney Registration Section and at his last known residential address, but the notices went unclaimed. The board then served notice of the complaint on the Clerk of the Supreme Court under Gov.Bar R. V(11)(B) (the Clerk is an agent for service of notice when a lawyer conceals his or her whereabouts).

{¶ 4} Respondent did not answer the complaint, and relator moved for default pursuant to Gov.Bar R. V(6)(F). A master commissioner appointed by the board considered the motion for default, making findings of fact, conclusions of law, and recommending the indefinite suspension. The board adopted the master commissioner's findings of misconduct and recommended sanction.

## Misconduct

### *Respondent Practiced Law with a Suspended License*

{¶ 5} Robert Nordstrom hired respondent to represent him in his divorce on April 13, 2005, shortly after respondent's suspension for noncompliance with CLE

requirements. Nordstrom paid respondent a $500 deposit and agreed to pay him at an hourly rate of $75. Respondent later also agreed to represent Nordstrom at the same rate in proceedings to determine custody of his three children. Nordstrom had no knowledge of respondent's suspension.

{¶ 6} Respondent filed Nordstrom's complaint for divorce in June 2005, notwithstanding his suspension. He also billed Nordstrom $300, and Nordstrom immediately paid the invoice. Nordstrom received a second bill in August 2005 for $525 and paid respondent in $50 installments. After he received a third bill for approximately $550 in October 2005, Nordstrom paid $250 in $50 installments toward the balance.

{¶ 7} The court scheduled a trial in Nordstrom's custody dispute for December 14, 2005. Respondent did not attend. Nordstrom obtained custody of the children notwithstanding his lawyer's absence. Respondent also did not appear at a February 1, 2006 pretrial hearing in Nordstrom's divorce action. Although respondent had called Nordstrom the day before the proceeding and instructed him not to go, Nordstrom went to court anyway. Nordstrom learned from a bailiff that respondent had also advised the court that neither he nor his client would appear.

{¶ 8} Respondent also did not appear on March 6, 2006, for the trial in Nordstrom's divorce case. Another attorney, Christine Kuntz, appeared instead, apparently at respondent's request. The court rescheduled the trial for May 10, 2006.

{¶ 9} Later that March, Nordstrom asked respondent in an e-mail for a refund of his retainer and for the return of his file. In reply, respondent promised to return Nordstrom's file within a week, but Nordstrom received nothing. Nordstrom eventually learned of respondent's April and December 2005 suspensions, and in May 2006, tried to meet with respondent, but their plans to meet fell through. Respondent eventually did e-mail Nordstrom copies of some of the file documents.

{¶ 10} A few days before the May 10, 2006 trial date in Nordstrom's divorce case, Kuntz reported to Nordstrom that respondent again did not intend to appear. Nordstrom e-mailed respondent, demanding a refund of his retainer. Respondent replied that Nordstrom owed an outstanding balance. Nordstrom e-mailed respondent back, this time demanding return of all the fees he had paid. Nordstrom also threatened to file a grievance, insisting that respondent was not entitled to payment for any services rendered while his license was under suspension. Respondent then agreed to determine how much Nordstrom had paid during the suspension period, but Nordstrom never received any refund.

{¶ 11} The day before the trial in his divorce, Nordstrom retained Mark R. Pryatel. Respondent did not appear on the trial date, but Pryatel did. The

court rescheduled the trial, and Nordstrom eventually filed a notice substituting Pryatel as his counsel. In May 2006, Nordstrom filed a grievance against respondent.

{¶ 12} Respondent undertook Nordstrom's divorce and child-custody cases after his license to practice had been suspended. Respondent did not disclose to his client that he had been suspended and then did little to ensure that his client had the representation he needed from another attorney. We thus agree with the board that respondent violated DR 1-102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(6) (prohibiting conduct that adversely reflects on the lawyer's fitness to practice law), 3–101(B) (prohibiting practicing law in violation of the regulations of the legal profession), 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), 7–101(A)(1) (prohibiting a lawyer from intentionally failing to seek the lawful objectives of a client), and 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of employment for professional services).

*Respondent Failed to Cooperate During the Disciplinary Investigation*

{¶ 13} In June 2006, relator sent respondent notice of Nordstrom's grievance to the office address at which he was registered as an attorney, but the notice and a certified letter of inquiry went unclaimed. In July 2006, relator hand-delivered notice of the grievance and a letter of inquiry to respondent at a residential address in Cleveland. Respondent did not reply. In October 2006, relator e-mailed respondent at his last known address, stressing the importance of his reply to the grievance. Though the e-mail transmission was apparently successful, respondent did not answer.

{¶ 14} By failing to respond to relator's investigative efforts, respondent violated Gov.Bar R. V(4)(G).

Sanction

{¶ 15} When lawyers continue to practice law despite the suspension of their licenses and then fail to cooperate in investigations of that misconduct, an indefinite suspension is warranted. See, e.g., *Toledo Bar Assn. v. Crandall*, 98 Ohio St.3d 444, 2003-Ohio-1637, 786 N.E.2d 872; *Akron Bar Assn. v. Barron* (1999), 85 Ohio St.3d 167, 707 N.E.2d 850; *Toledo Bar Assn. v. Christensen* (1996), 77 Ohio St.3d 71, 671 N.E.2d 30. Respondent has offered nothing in mitigation to warrant a less exacting sanction. We therefore adopt the board's recommendation.

{¶ 16} Respondent is suspended indefinitely from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

Moyer, C.J., and Lundberg Stratton, O'Connor, O'Donnell, Lanzinger, and Cupp, JJ., concur.

Pfeifer, J., dissents and would permanently disbar respondent.

Jonathan E. Coughlan, Disciplinary Counsel, and Philip A. King, Assistant Disciplinary Counsel, for relator.