**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Austin,* **Slip Opinion No. 2019-Ohio-3325.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-3325

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* AUSTIN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Austin,* Slip Opinion No. 2019-Ohio-3325.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct and the Rules for the Government of the Bar—Indefinite suspension.*

(No. 2018-0159—Submitted May 21, 2019—Decided August 21, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-067.

_____

**Per Curiam.**

{¶ 1} Respondent, Rebecca Jo Austin, of Lakewood, Ohio, Attorney Registration No. 0088694, was admitted to the practice of law in Ohio in 2012.

{¶ 2} On November 30, 2017, relator, Cleveland Metropolitan Bar Association, charged Austin with neglecting two client matters, failing to cooperate in a disciplinary investigation, and other professional misconduct. Austin failed to

answer the complaint, and on February 23, 2018, we imposed an interim default suspension pursuant to Gov.Bar R. V(14)(B)(1). 152 Ohio St.3d 1253, 2018-Ohio-656, 96 N.E.3d 290. On May 4, 2018, we found her in contempt because she had not timely complied with our default-suspension order. 152 Ohio St.3d 1459, 2018-Ohio-1710, 97 N.E.3d 497. On August 22, 2018, Austin moved for leave to answer relator's complaint, and on October 1, 2018, we granted her motion and remanded the case to the Board of Professional Conduct, although we kept her interim default suspension in place. 153 Ohio St.3d 1489, 2018-Ohio-3955, 108 N.E.3d 86.

{¶ 3} On remand, relator amended its complaint to include additional alleged misconduct, including that Austin continued to practice law during her interim default suspension. Austin stipulated to most of the factual allegations in the amended complaint but not to any ethical-rule violations. After a hearing before a panel of the board, the board issued a report finding that Austin had engaged in most of the charged misconduct[1] and recommending that we indefinitely suspend her from the practice of law, grant her credit for the time she has served under her interim default suspension, order her to pay restitution to a former client, and impose conditions on her reinstatement. Neither party filed objections to the board's report.

{¶ 4} Upon our review of the record, we adopt the board's findings of misconduct and recommended sanction. However, we conclude that Austin shall not receive any credit for the nearly three-month period that she continued to practice law during her interim suspension. Therefore, Austin shall receive credit beginning May 16, 2018.

---

1. Relator withdrew Count V of its amended complaint, and the panel later dismissed that count.

**Misconduct**

*Count I—the Long matter*

{¶ 5} On February 24, 2017, Joseph Long paid Austin a retainer to assist him with a postdecree filing in his divorce case. Long thereafter attempted to contact Austin by phone, e-mail, and text, but she failed to respond to his messages. Long also sent Austin a narrative about his legal matter, but she failed to file anything on his behalf. About two months after retaining Austin, Long sent her an e-mail requesting a refund of his retainer. Austin again failed to reply.

{¶ 6} On May 10, 2017, Austin sent Long an e-mail apologizing for "recent communications issues," which she claimed were caused by technological problems with her e-mail and phone and exacerbated by personal issues. Later the same day, Long sent Austin an e-mail terminating her services and again requesting a refund of his retainer. Austin, however, failed to return the unearned portion of Long's retainer until more than ten months later.

{¶ 7} Based on this conduct, the board found that Austin violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), and 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client). We agree with the board's findings of misconduct.

*Count II—the employment-discrimination case*

{¶ 8} In 2017, Austin represented the defendants in an employment-discrimination case. The parties settled the matter, and Austin was to finalize a settlement entry with the plaintiff's counsel. The settlement, however, was not finalized, and the court scheduled a show-cause hearing against Austin for October 2, 2017. Austin failed to appear for the hearing, and the court found her in contempt. Austin also failed to appear for a hearing on the plaintiff's supplemental motion to enforce the settlement and for attorney fees. At her disciplinary hearing,

Austin testified that she had not received electronic notice of the hearings but she also acknowledged that the docket for the case was available online and that any problems she experienced with her e-mail did not absolve her of the duty to attend court hearings.

{¶ 9} Based on this conduct, the board found that Austin committed another violation of Prof.Cond.R. 1.3. We agree with the board's finding of misconduct.

*Count III—the Rogers matter*

{¶ 10} On February 19, 2018, Ashley Rogers retained Austin to represent her in a domestic-violence action against Rogers's husband. Austin advised Rogers how to obtain an ex parte temporary protection order, which Rogers later secured on her own. Four days later, on February 23, we issued Austin's interim default suspension.

{¶ 11} On February 27, 2018, Austin met with Rogers and collected $1,000 in cash and a $400 check for the representation. Austin failed to inform Rogers about the suspension. One day later, Austin advised Rogers that Rogers did not need to attend the hearing on her petition for a protection order that was scheduled for the next day. Instead, Austin appeared for the hearing—although she declined to enter a notice of appearance—and signed an agreed entry continuing the matter as "Pro Se, Attorney for Petitioner." After the hearing, Austin notified Rogers of the new hearing date but again failed to mention her suspension.

{¶ 12} On March 5, 2018, Rogers sent Austin a text message stating that the court had contacted her because Austin had not entered an appearance on Rogers's behalf. Rogers asked Austin whether she should hire a new attorney. Austin falsely responded, "I'm representing you and I'll clear it up." On March 12, Rogers sent Austin another text expressing similar concerns. Austin replied, "Don't be worried * * *. Sit tight and give me a few days, I'll have info for you then." By March 14, Rogers had learned of Austin's suspension and sent her a text message requesting

4

a refund. In response, Austin stated that she was "addressing the situation" and that she anticipated that her suspension would be "very temporary."

**{¶ 13}** A few days later, Austin sent Rogers an invoice charging Rogers for services that Austin had performed during her suspension. At her disciplinary hearing, Austin attempted to characterize those services as nonlegal. But the board found that Austin's actions were "the essence of legal representation." Austin later returned Rogers's $400 check but never refunded her $1,000 cash payment.

**{¶ 14}** Based on this conduct, the board found that Austin violated Prof.Cond.R. 1.5(a) (prohibiting a lawyer from charging or collecting an illegal or clearly excessive fee), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). We agree with the board's findings of misconduct.

*Count IV—misconduct during Austin's interim default suspension*

**{¶ 15}** Count IV of relator's amended complaint involved three instances of Austin engaging in misconduct after we issued her February 23, 2018 interim default suspension.

**{¶ 16}** First, as noted above, Austin appeared for the March 1, 2018 hearing on Rogers's petition for a domestic-violence protection order. After a magistrate raised the issue of Austin's suspension, Austin replied that she was "filing a petition," that her "boss" would take over her cases, and that she hoped by "next week" the issue would be resolved. When she made those statements, however, Austin was a solo practitioner without a boss to take over her cases. In addition, Austin had not filed a petition for reinstatement and would not file anything in this

disciplinary matter until more than five months later. At her disciplinary hearing, Austin acknowledged that her statements to the magistrate were not true.

{¶ 17} Second, on March 5, 2018—more than a week after Austin's suspension—she attended an attorney conference in a juvenile-court case in which she was serving as the guardian ad litem for three minor children. Austin failed to inform the court that her license had been suspended. After one of the parties in the case filed a motion to remove Austin because of her suspension, Austin filed a document stating that she had been "petitioning" this court to reinstate her license and "working diligently to comply with the Supreme Court." But two weeks before she filed the document, we had issued an order to show cause why she should not be held in contempt for failing to comply with our default-suspension order, and she never filed a response to that show-cause order.

{¶ 18} Third, on May 15, 2018—almost three months after we issued Austin's interim default suspension—she sent a letter to the guardian ad litem for two children in a divorce proceeding. Austin's letter referred to the father in the divorce case as "my client" in a related criminal matter. The letterhead stated "Austin Law LLc" and included a website address of "www.clelawfirm.com." The letter referred to Austin's suspension only indirectly, by stating, "Regardless of the status of my professional license, I pride myself on being a hard-working, ethical, and astute *guardian ad litem*." (Italics sic.)

{¶ 19} Based on this conduct, the board found that Austin violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal) and 5.5(a). We agree with the board's findings of misconduct.

*Counts VI and VII—additional rule violations and failure to cooperate*

{¶ 20} In October 2017, Austin's malpractice insurance lapsed, and she thereafter failed to properly notify clients in writing that she lacked insurance. In addition, at the time of her misconduct, her law practice had no permanent physical

address. Rather than use her home address or a post-office box as her business address, she used the address of a UPS store, which she later acknowledged was facially misleading. In addition, Austin failed to pay her attorney-registration fees for the period of September 15, 2017, through October 31, 2017. And she failed to cooperate in relator's disciplinary investigation between May 2017 and June 2018. She also failed to appear for a scheduled deposition.

{¶ 21} Based on this conduct, the board found that Austin violated Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional-liability insurance and obtain a signed acknowledgment of that notice from the client), Prof.Cond.R. 7.1 (prohibiting a lawyer from using a false, misleading, or nonverifiable communication about the lawyer or the lawyer's services), Gov.Bar R. VI (requiring an attorney to register with the Supreme Court on or before the first day of September in each odd-numbered year), and Prof.Cond.R. 8.1(b) and Gov.Bar R. V(9)(G) (both requiring an attorney to cooperate with a disciplinary investigation). We agree with the board's findings of misconduct.

## Sanction

{¶ 22} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 23} As aggravating factors, the board found that Austin had engaged in a pattern of misconduct, committed multiple offenses, and initially failed to cooperate in relator's disciplinary investigation. *See* Gov.Bar R. V(13)(B)(3), (4), and (5). The board also concluded that Austin's misconduct had harmed a vulnerable client—Ashley Rogers—and that Austin had failed to make restitution to Rogers. *See* Gov.Bar R. V(13)(B)(8) and (9).

**{¶ 24}** In mitigation, the board noted that Austin has a clean disciplinary record and lacked a dishonest or selfish motive. *See* Gov.Bar R. V(13)(C)(1) and (2). Specifically, the panel members had the impression that Austin "was never trying to take advantage of any client and that she was genuinely trying to help her clients while keeping all of her spinning plates in the air. Her plates crashed. She is picking up the pieces." The board also noted that Austin had made full and free disclosures during her disciplinary hearing. *See* Gov.Bar R. V(13)(C)(4). The evidence did not establish the existence of a mental disorder that would qualify as a mitigating factor under Gov.Bar R. V(13)(C)(7) (permitting the existence of a disorder to be considered a mitigating factor only if certain conditions are met). However, the board noted Austin's testimony that at the time of her misconduct, she was operating in "crisis mode" due to various stressors in her personal life and had been receiving treatment from a mental-health professional.

**{¶ 25}** To support its recommended sanction, the board cited several decisions imposing indefinite suspensions for comparable misconduct. For example, in *Toledo Bar Assn. v. Woodley*, 132 Ohio St.3d 120, 2012-Ohio-2458, 969 N.E.2d 1192, we indefinitely suspended an attorney who neglected three client matters, failed to return those clients' unearned fees, continued practicing law during his attorney-registration suspension, requested additional fees from a client without advising the client that he was suspended, and failed to cooperate in the disciplinary investigation. Similarly, in *Disciplinary Counsel v. Higgins*, 117 Ohio St.3d 473, 2008-Ohio-1509, 884 N.E.2d 1070, we indefinitely suspended an attorney who continued to practice law during his continuing-legal-education suspension, accepted fees from a client after his suspension, failed to disclose to the client that he was suspended, neglected the client's matter, and failed to cooperate in the ensuing disciplinary investigation. And in *Disciplinary Counsel v. Mitchell*, 124 Ohio St.3d 266, 2010-Ohio-135, 921 N.E.2d 634, we indefinitely suspended an attorney who practiced law during his attorney-registration

suspension and intentionally attempted to deceive a court as to his identity and the status of his law license.

{¶ 26} Here, Austin neglected two client matters, practiced law after the imposition of her interim default suspension, collected legal fees from a client while she was suspended, failed to fully refund those fees, made misrepresentations to a client and courts about her suspension, and failed to cooperate in relator's disciplinary investigation. The board expressly opposes disbarment, concluding that Austin "likely has the ability to establish that she is a proper person to be readmitted to the bar of Ohio in the future." Considering the aggravating and mitigating factors and the sanctions imposed in comparable cases, we adopt the board's recommended sanction. An indefinite suspension will serve to protect the public while also leaving open the possibility that Austin might be able to return to the competent, ethical, and professional practice of law.

### Conclusion

{¶ 27} For the reasons explained above, Rebecca Jo Austin is indefinitely suspended from the practice of law in Ohio, with credit from May 16, 2018, for the time she has served under the February 23, 2018 interim default suspension. Within 90 days of our disciplinary order, Austin shall make restitution in the amount of $1,000 to Ashley Rogers or reimburse the Lawyers' Fund for Client Protection for any payments made to Rogers. In addition to the requirements set forth in Gov.Bar R. V(25)(D)(1), Austin's reinstatement shall be conditioned upon proof that she has (1) undergone an assessment by the Ohio Lawyers' Assistance Program and (2) fully complied with the recommendations resulting from that assessment, including the receipt of any mental-health services in the Cleveland area. Costs are taxed to Austin.

Judgment accordingly.

KENNEDY, FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

O'CONNOR, C.J., and FISCHER, J., would not award credit for time served under the interim default suspension.

_____

Thompson Hine, L.L.P., and Karen E. Rubin; and Heather M. Zirke and Kari L. Burns, Bar Counsel, for relator.

Rebecca Jo Austin, pro se.

_____