**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Petracci*, **Slip Opinion No. 2021-Ohio-249.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-249

DISCIPLINARY COUNSEL *v*. PETRACCI.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Petracci*, Slip Opinion No. 2021-Ohio-249.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct and the Rules for the Government of the Bar—Indefinite suspension.*

(No. 2020-0974—Submitted January 13, 2021—Decided February 3, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-060.

_____

**Per Curiam.**

{¶ 1} Respondent, Jennifer Dawn Petracci, formerly known as Jennifer Dawn Schartiger, of Wadsworth, Ohio, Attorney Registration No. 0093034, was admitted to the practice of law in Ohio in 2015.

{¶ 2} In a March 2020 amended complaint, relator, disciplinary counsel, alleged that Petracci had neglected several client matters, failed to communicate with and deceived her clients, misappropriated their funds, and ultimately

abandoned their cases. Relator further alleged that Petracci had failed to cooperate in the resulting disciplinary investigations and lied to conceal her misconduct.

{¶ 3} The parties submitted extensive stipulations of fact and misconduct and numerous exhibits. Petracci testified before a three-member hearing panel of the Board of Professional Conduct. The board issued a report finding that Petracci had committed the charged misconduct and recommending that she be indefinitely suspended from the practice of law with certain conditions on her reinstatement to the profession. No objections have been filed.

{¶ 4} For the reasons that follow, we adopt the board's findings of misconduct and recommended sanction.

### Stipulated Facts and Misconduct

*Count I—The Tucker Matter*

{¶ 5} In July 2017, Petracci agreed to represent Treasure Tucker with regard to injuries she sustained in a December 2016 automobile accident. Although Tucker and Petracci agreed to a contingent fee, Petracci did not have Tucker sign a written fee agreement.

{¶ 6} Tucker had previously been represented in the matter by Kisling, Nestico & Redick, L.L.C. ("KNR"), and she had agreed to settle her claim with State Farm Mutual Automobile Insurance Company for $6,500. In June 2017, State Farm sent a release-of-claims form for her signature and a $5,026.61 settlement check payable to Tucker and KNR. The insurer also issued a separate $1,473.39 check to the state of Ohio to satisfy a Medicaid lien, and the state negotiated that check. After Tucker terminated KNR's representation, the firm notified State Farm of that fact and asserted a charging lien equal to one-third of Tucker's settlement. State Farm stopped payment on the settlement check.

{¶ 7} In March 2018, while represented by Petracci, Tucker agreed for a second time to settle her claim with State Farm for $6,500 and KNR agreed to accept $1,700 in satisfaction of its lien. State Farm paid KNR directly and issued

2

a check payable to Petracci and Tucker in the amount of $4,800, an amount that did not take into account the $1,473.39 it previously paid to the state.

{¶ 8} On March 27, Tucker met with Petracci and endorsed the settlement check. Petracci deposited it into her otherwise empty client trust account that same day. One week later, she withdrew the entire $4,800 and deposited it into her personal checking account. Petracci did not prepare or have Tucker sign a closing statement. Instead, she sent Tucker a letter stating the total settlement amount, the payments to the state and KNR, and her own fee of $231.61. The letter erroneously stated that Tucker's share of the settlement was $2,825, when she was entitled to receive $3,095. Contrary to Petracci's representation in that letter, she did not enclose Tucker's check.

{¶ 9} Petracci immediately began misappropriating Tucker's funds. By June 26, she had spent the entire $4,800 settlement and had a negative balance in her personal checking account. She twice arranged to meet with Tucker to distribute the settlement proceeds, but she canceled both meetings shortly before they were scheduled to occur.

{¶ 10} After the first meeting was canceled, Tucker's mother filed a grievance with the Akron Bar Association. Wayne Rice, the bar association's counsel, met with Petracci on July 26 to discuss the grievance. During that meeting, he recognized that Petracci had miscalculated the settlement breakdown. The next day, Petracci met Tucker at the bar association's office, where they each initialed the corrected settlement breakdown and Petracci gave Tucker two checks from her personal account—one backdated to May 5 for $2,825 and the other dated July 27 for $270.

{¶ 11} When Tucker attempted to negotiate the checks on August 5, the smaller check cleared but the larger check was returned for insufficient funds. At Rice's request, Petracci gave Tucker a $2,855 cashier's check (the amount due plus

a $30 returned-check fee) on August 28. At the time of her disciplinary hearing, Petracci still owed State Farm restitution of $1,473.39 for its overpayment.

{¶ 12} Petracci admits that she knowingly made false statements and failed to disclose other material facts during the Akron Bar Association's investigation. For example, she lied about her reason for canceling one meeting with Tucker and falsely claimed that she had purchased a cashier's check for $2,825 in April 2018 and given it to Tucker in July. She also failed to disclose that she had withdrawn Tucker's settlement proceeds from her client trust account and deposited them into her personal account and that she had misappropriated both Tucker's share of the proceeds and State Farm's overpayment. Relator's investigation showed that as a result of Petracci's false statements and material omissions, the Akron Bar Association dismissed Tucker's grievance in August 2018.

{¶ 13} Based on this conduct, the parties stipulated and the board found that Petracci violated Prof.Cond.R. 1.5(c)(1) (requiring a lawyer to set forth a contingent-fee agreement in a writing signed by both the client and the lawyer), 1.5(c)(2) (requiring a lawyer entitled to compensation under a contingent-fee agreement to prepare a closing statement to be signed by the lawyer and the client), 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), 8.1(b) (prohibiting a lawyer from failing to disclose a material fact in response to a demand for information from a disciplinary authority), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

*Count II—The Jackson Matter*

{¶ 14} On April 5, 2018, Joshua Jackson paid Petracci a flat fee of $75 to send a demand letter to a vehicle-repair company to recover the cost of a faulty

repair. Jackson paid the fee that day, and although Petracci had not yet performed any work, she failed to deposit the funds into her client trust account.

{¶ 15} On April 11, Petracci sent a letter on Jackson's behalf, demanding a refund of $2,911.74 by April 25. After several weeks of negotiation, Petracci e-mailed Jackson's wife, Loren, to inform her that she had received a check for the full amount. She then falsely informed Loren that the bank would hold those funds for ten days. In response to Loren's May 29 inquiry about the status of the settlement, Petracci falsely stated, "I haven't received notification from my bank that it was cleared. I will check on it tomorrow." But by the next day, Petracci had misappropriated more than $2,800 of the refund.

{¶ 16} Petracci lied to the Jacksons about the status of the settlement for several months. On September 13, Loren e-mailed Petracci to inform her that she had spoken with the manager of Petracci's bank and the manager was unaware of any issues with the check. Thereafter, Petracci ceased all communication with the Jacksons. At the time of her disciplinary hearing, she still owed them restitution of $2,911.74.

{¶ 17} The parties stipulated and the board found that this conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.15(a), and 8.4(c).

*Counts III and IV—The Beck and Youngen Matters*

{¶ 18} Ronald Beck retained Petracci to represent him in a divorce in June 2018 and paid a $1,200 retainer by personal check. In September 2018, Thad Youngen retained her to seek modification of his child support and parenting time and paid a $2,000 retainer by credit card. Petracci presented both clients with fee agreements indicating that Petracci would charge $125 an hour. Those agreements stated that all funds would be held in trust until earned, but before she performed

any significant work on the matters, Petracci deposited both retainers into her overdrawn personal checking account and began to misappropriate those funds.

{¶ 19} Although Petracci communicated with Beck's wife for several months, drafted a separation agreement, and exchanged some text messages with Beck, she sent only a single text to Youngen, claiming that she had nearly completed his motions to modify custody and child support and that she would file the motions within the week. She ceased communicating with both clients without performing any service of value to them and failed to refund their unearned retainers—though Youngen received a full refund from his credit-card issuer, Chase Bank USA, N.A.

{¶ 20} The parties stipulated and the board found that Petracci's conduct in these matters violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.15(a), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), and 8.4(c).

*Count V—The Quick Matter*

{¶ 21} In June 2016, Petracci agreed to represent Katelyn Quick in a civil matter arising from an assault, and Quick signed a contingent-fee agreement at that time. In October 2016, Petracci falsely informed Quick that she had filed a complaint on her behalf.

{¶ 22} On May 22, 2018, Petracci filed a complaint alleging claims for civil assault, civil battery, and intentional infliction of emotional distress. The defendant moved to dismiss the complaint on the ground that Quick's claims were barred by the applicable one-year statute of limitations, *see* R.C. 2305.111(B), and sought an award of attorney fees. The court granted Petracci leave to amend her complaint, and when the defendant moved to dismiss that complaint, Petracci argued—without her client's knowledge or consent—that the statute of limitations should be tolled because her client was of unsound mind following the assault.

{¶ 23} On October 23, 2018, the court dismissed Quick's complaint as time-barred and set a hearing for the defendant's motion for attorney fees. Two days later, Petracci rebuffed Quick's text message inquiring about the dismissal by stating, "I told you that they had asked for it to be dismissed[.] The judge denied that so maybe that's what she's looking at I don't know." She did not respond to Quick's reply that the case had been dismissed due to the expiration of the statute of limitations.

{¶ 24} Following a hearing in January 2019, the trial court found that Petracci had engaged in frivolous conduct and ordered her and Quick to jointly pay $1,627.50 of the defendant's attorney fees. Petracci, however, failed to notify Quick of the court's decision and did not respond to her inquiries about the court's entry.

{¶ 25} When the attorney fees remained unpaid in June 2019, the defendant filed a contempt motion. Petracci did not accept service of the court's show-cause order and failed to respond to Quick's inquiries about the scheduled contempt hearing. The hearing was continued at least four times to allow for service of the show-cause order on Petracci, which was finally obtained by the Medina County sheriff on December 10, 2019. The contempt motion remained pending at the time of Petracci's disciplinary hearing.

{¶ 26} The parties stipulated and the board found that Petracci's conduct in this matter violated Prof.Cond.R. 1.3, 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 3.1 (prohibiting a lawyer from bringing or defending a proceeding that is unsupported by law or lacks a good-faith argument for an extension, modification, or reversal of existing law), 8.4(c), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

*Count VI—Misconduct During the Disciplinary Proceedings*

{¶ 27} Petracci has stipulated that she signed for some letters of inquiry sent to her by relator and the Medina County Bar Association and allowed others to be returned unclaimed. After being served with a subpoena for deposition, Petracci called relator's office and assured relator that she would respond to the letters of inquiry, but she failed to do so. And the Medina County Bar Association's attempts to leave telephone messages for Petracci failed because her voicemail box was full.

{¶ 28} Although Petracci brought client files when she appeared with counsel for a deposition in March 2019, she did not turn the files over to relator the next day, as she had said she would. Nor did she submit any written responses to her clients' grievances. After relator made additional inquiries, Petracci turned over four client files more than two weeks after the deposition.

{¶ 29} In April 2019, relator issued a subpoena compelling Petracci's attendance and production of documents at a second deposition. Petracci appeared and produced some of the requested documents, but she also falsely testified that she had paid the Medicaid lien in the Tucker matter with a check drawn on one of her personal accounts. Although Petracci did not comply with a subpoena requiring her to appear and produce documents at a third deposition, she eventually submitted some of the documents that she had been ordered to produce.

{¶ 30} The parties stipulated and the board found that Petracci's conduct during the investigation of her clients' grievances violated Prof.Cond.R. 8.1(a) and 8.1(b) and Gov.Bar R. V(9)(G) (requiring a lawyer to cooperate with a disciplinary investigation).

**Sanction**

{¶ 31} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 32} As aggravating factors, the parties stipulated and the board found that Petracci engaged in a pattern of misconduct, committed multiple offenses, and failed to make restitution to all of the affected clients. *See* Gov.Bar R. V(13)(B)(3), (4), and (9). In addition, the board found that although Petracci cooperated in the proceedings before the board, her conduct during relator's investigation into these matters "ranged from negligent at best to downright deceitful." *See* Gov.Bar R. V(13)(B)(5). As for mitigating factors, the parties stipulated and the board found that Petracci does not have a history of prior discipline. *See* Gov.Bar R. V(13)(C)(1). The board also credited Petracci for acknowledging the wrongfulness of and expressing sincere remorse for her misconduct. Although Petracci testified that her misconduct was due in part to previously undiagnosed mental disorders that were exacerbated by marital and financial problems following a motorcycle accident, the board found that she had not submitted sufficient evidence to establish those disorders as a mitigating factor. *See* Gov.Bar R. V(13)(C)(7).

{¶ 33} Relator nonetheless acknowledged that Petracci's mental health and other extenuating circumstances played a role in her serious misconduct. For that reason, relator recommended that she be indefinitely suspended from the practice of law, with strict conditions on reinstatement to ensure that she will not be reinstated unless she is capable of returning to the competent, ethical, and professional practice of law.

{¶ 34} In weighing the appropriate sanction for Petracci's misconduct, the board considered two cases in which we permanently disbarred attorneys who had engaged in dishonest conduct, neglected one or more client matters, failed to reasonably communicate with clients, and misappropriated client funds. *See Disciplinary Counsel v. Harter*, 154 Ohio St.3d 561, 2018-Ohio-3899, 116 N.E.3d 1255; *Cleveland Metro. Bar Assn. v. Freeman*, 128 Ohio St.3d 421, 2011-Ohio-1483, 945 N.E.2d 1034. Like Petracci, Harter made false statements of material fact—and failed to disclose material facts—in connection with his disciplinary

investigation. But Harter also continued to give false testimony at his disciplinary hearing and failed to acknowledge the wrongful nature of some of his misconduct, and Freeman was disbarred in a default proceeding. Petracci's conduct is distinguishable from both Harter's and Freeman's in that she cooperated in the disciplinary proceedings after relator filed a formal complaint, she entered into comprehensive stipulations of fact and misconduct, she acknowledged the wrongfulness of her conduct, and she expressed sincere remorse.

{¶ 35} The board found that Petracci's conduct was most comparable to cases in which we imposed indefinite suspensions and required the attorneys to submit to an assessment conducted by the Ohio Lawyers Assistance Program ("OLAP") when the evidence suggested that a mental disorder may have contributed to the misconduct. For example, in *Cleveland Metro. Bar Assn. v. Austin*, 157 Ohio St.3d 184, 2019-Ohio-3325, 133 N.E.3d 499, Austin had neglected two client matters, failed to reasonably communicate with one of her clients, and failed to cooperate in the ensuing disciplinary investigation. In addition to continuing to practice law during the resulting interim default suspension, Austin made false statements to her clients and the courts, represented at least one client in court without informing the court of her suspension, and failed to return unearned attorney fees. Although Austin did not present sufficient evidence to establish the existence of a mitigation-qualifying mental disorder, she testified that she had been "operating in 'crisis mode' due to various stressors in her personal life and had been receiving treatment from a mental-health professional" at the time of her misconduct. *Id.* at ¶ 24. We held that an indefinite suspension would "serve to protect the public while also leaving open the possibility that Austin might be able to return to the competent, ethical, and professional practice of law," *id.* at ¶ 26, and we conditioned her reinstatement on, among other things, her making restitution to her clients, submitting to an OLAP evaluation, and complying with any OLAP recommendations.

**{¶ 36}** In *Disciplinary Counsel v. Delay*, 157 Ohio St.3d 137, 2019-Ohio-2955, 132 N.E.3d 680, we indefinitely suspended an attorney who had neglected client matters, lied to his clients, endangered a client's settlement by refusing to cooperate with her insurance company, falsified documents, and given "blatantly false" testimony during his disciplinary hearing, *id.* at ¶ 23. Although Delay denied the existence of a mental disorder, the panel expressed concern that underlying psychological or emotional issues may have impaired his judgment in handling his cases. Therefore, in addition to requiring him to pay restitution to his clients, we conditioned his reinstatement on his participation in an OLAP evaluation and compliance with any resulting treatment recommendations.

**{¶ 37}** After independently reviewing the record in this case, we adopt the board's findings of misconduct and agree that an indefinite suspension with strict conditions on Petracci's reinstatement will adequately protect the public.

## Conclusion

**{¶ 38}** Accordingly, Jennifer Dawn Petracci is indefinitely suspended from the practice of law in Ohio. In addition to the reinstatement requirements set forth in Gov.Bar R. V(25), Petracci shall be required to demonstrate that she has (1) committed no further misconduct, (2) made restitution of $1,473.39 to State Farm, $2,911.74 to Joshua Jackson, $1,200 to Ronald Beck, and $2,000 to Thad Youngen's credit-card company, Chase Bank USA, N.A., (3) satisfied the judgment entered against her and Quick on February 13, 2019, in *Quick v. Hamrick*, Tuscarawas C.P. No. 2018 CT 05 0474, i.e., paid the entire $1,627.50 awarded to the defendant, Todd Hamrick, and court costs, (4) submitted to an assessment conducted by OLAP and complied with all recommendations arising from that assessment, and (5) received a prognosis from a qualified healthcare professional or qualified chemical-dependency professional that she is capable of returning to the competent, ethical, and professional practice of law under specified conditions. Costs are taxed to Petracci.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Keith E. Young, for respondent.

_____