**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Hartley*, **Slip Opinion No. 2024-Ohio-5232.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5232

DISCIPLINARY COUNSEL *v.* HARTLEY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Hartley*, Slip Opinion No. 2024-Ohio-5232.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including committing illegal acts adversely reflecting on the lawyer's honesty or trustworthiness— Indefinite suspension.*

(No. 2024-1098—Submitted September 17, 2024—Decided November 5, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-001.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Aaron Paul Hartley, of Kettering, Ohio, Attorney Registration No. 0083170, was admitted to the practice of law in Ohio in 2008. On November 1, 2021, this court imposed an interim remedial suspension on Hartley based on allegations that he had engaged in conduct that violated the Rules of Professional Conduct and that he posed a substantial threat of serious harm to the public. *See Disciplinary Counsel v. Hartley*, 2021-Ohio-3893. That suspension remains in effect.

{¶ 2} In a February 2023 complaint, relator, disciplinary counsel, charged Hartley with six violations of the Rules of Professional Conduct arising out of conduct related to his misdemeanor convictions for assault, disorderly conduct, telecommunications harassment, and menacing.

{¶ 3} The parties submitted stipulated exhibits and stipulations of fact and aggravating and mitigating factors. After a hearing, a panel of the Board of Professional Conduct found that Hartley committed all the violations charged in the complaint and recommended as the appropriate sanction an indefinite suspension. The panel further recommended that certain conditions be placed on Hartley's reinstatement to the practice of law. The board adopted the panel's findings of fact and misconduct and its recommended sanction. The parties did not file any objections.

{¶ 4} After reviewing the record and our applicable precedent, we adopt the board's findings of misconduct and its recommended sanction.

## I. MISCONDUCT

{¶ 5} Hartley's misconduct underlying this case resulted in his convictions for five offenses: assault, disorderly conduct on two separate occasions, telecommunications harassment, and menacing.

### A. Assault Conviction

{¶ 6} One night in January 2020, Hartley contacted L.T., whose adult son Hartley had previously represented in a criminal matter. Over several hours, Hartley and L.T. spoke by phone and exchanged text messages. Sounding inebriated, Hartley repeatedly insisted that L.T. come to his home. L.T. declined, but out of concern for his well-being, she said she would talk with him if he came to her residence.

{¶ 7} When Hartley arrived at L.T.'s home, he was visibly intoxicated. While at the home, Hartley made several inappropriate and sexually charged comments about L.T.'s 13-year-old daughter, E.T. L.T. asked Hartley to leave, but he refused. L.T. then attempted to call 9-1-1, prompting a physical struggle, during which Hartley tried to take her cellphone. When police officers arrived, they observed that Hartley's speech was loud and slurred, that he was stumbling, and that he smelled of alcohol.

{¶ 8} Hartley was charged with one count of assault, a first-degree misdemeanor in violation of R.C. 2903.13. Shortly thereafter, L.T. filed for and received a criminal protection order protecting E.T. and herself from Hartley. In July 2021, a jury found Hartley guilty of the assault charge. He was sentenced to 180 days in jail with 170 days suspended, fined $1,000 with $850 suspended, and ordered to serve three years of supervised probation; the probation conditions included his payment of $2,000 in restitution for damage he had caused to L.T.'s home. *See State v. Hartley*, Kettering M.C. No. 20CRB00148. The Second District Court of Appeals affirmed Hartley's conviction. *State v. Hartley*, 2023-Ohio-158 (2d Dist.).

### B. First Disorderly-Conduct Conviction

{¶ 9} In August 2020, Hartley and his wife, C.H., had an argument at their home. C.H. alleged that Hartley grabbed her, threw her down, and stepped on her neck with his foot; Hartley denied these allegations. Two days later, Hartley was

charged with one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25. Later that day, C.H. filed for and received an ex parte domestic-violence civil protection order. The next week, C.H. filed for divorce.

{¶ 10} In March 2022, Hartley pleaded no contest to, and was found guilty of, an amended charge of disorderly conduct, a fourth-degree misdemeanor in violation of Kettering Cod.Ord. 648.04(a)(1). He was sentenced to a fully suspended term of 30 days in jail, fined $250 with $200 suspended, and ordered to serve three years of supervised probation with conditions. *See State v. Hartley*, Kettering M.C. No. 20CRB00992.

### C. Second Disorderly-Conduct Conviction

{¶ 11} In October 2020, Hartley was with his two daughters, eight-year-old N.H. and six-year-old A.H., at his law office. According to a detective's statement of facts filed in the Kettering Municipal Court, Hartley grabbed N.H., who was sitting in a chair, by the neck and squeezed her neck with his hand, leaving her unable to breathe. The detective further stated that while holding her neck, Hartley lifted N.H. from the chair and told her to "shut up" before releasing her.

{¶ 12} M.A.M., the girls' mother, filed for and received an ex parte domestic-violence civil protection order protecting N.H. and A.H. Hartley was charged with one count of domestic violence, in violation of R.C. 2919.25; two counts of child endangering, in violation of R.C. 2919.22(A) and (B); and one count of assault, in violation of R.C. 2903.13—all first-degree misdemeanors. A jury found Hartley not guilty of domestic violence and assault, and the prosecution dismissed the R.C. 2919.22(B) child-endangering count. The jury could not reach a verdict on the other child-endangering count, so the judge scheduled another trial on that count.

{¶ 13} Before the second trial, Hartley pleaded no contest to an amended charge of disorderly conduct, a fourth-degree misdemeanor in violation of Kettering Cod.Ord. 648.04(a)(2). He was found guilty and sentenced to 30 days in

jail with 28 days suspended and credit for two days served. He was also fined $250 with $200 suspended and ordered to serve three years of supervised probation with conditions. *See State v. Hartley*, Kettering M.C. No. 20CRB01311.

### D. Telecommunications-Harassment Conviction

{¶ 14} In September and October 2021, Hartley made a series of posts and comments aimed at C.H. on his public Facebook account, which featured more than 500 friends, including judges, Dayton-area attorneys, and clerks of court. These posts included vulgar references to C.H.—calling her a "simple cunt," a "whore," an "awful, evil, malicious, wicked[] woman," a "sociopath," and a "pathological liar." In one post, Hartley stated that he had a video of C.H. engaging in sexual activity and threatened to release it, and in another post, he accused C.H. of extortion and adultery. Hartley's posts included hashtags of C.H.'s maiden, married, and current last names.

{¶ 15} Based on Hartley's Facebook posts, he was charged with one count of violating a protection order, in violation of R.C. 2919.27(A)(1), and two counts of telecommunications harassment, in violation of R.C. 2917.21(B)(1) and (B)(2)—all first-degree misdemeanors. Hartley pleaded no contest to, and was found guilty of, one of the telecommunications-harassment counts, and the remaining charges were dismissed. He was sentenced to a fully suspended term of 180 days in jail, fined $1,000 with $950 suspended, and ordered to serve five years of supervised probation with conditions. *See State v. Hartley*, Kettering M.C. No. 21CRB01432.

### E. Menacing Conviction

{¶ 16} Hartley and M.A.M. entered into a shared-parenting agreement for N.H. and A.H. in 2017. In August 2021, attorney Michelle Maciorowski, who represented M.A.M. in the custody case, filed a motion to terminate the agreement and to award M.A.M. full custody and child support. The motion alleged that Hartley had "been acting erratically and ha[d] a history of making threats of

violence towards [M.A.M.] and the children's step-father" and referred to the criminal cases then pending against Hartley.

{¶ 17} After the motion was filed, Hartley made public threats against Maciorowski on his Facebook account. In one post, Harley called Maciorowski a "fat cunt" and a "moron" and stated that he was "still waiting on [her] thanks for a bullet not being placed in [her] brain." In other posts, he called her a "liar" and, in explaining that she should not "fuck with" his family, wrote that "he [would] fucking roll [her]" and added: "Words, actions, have consequence. :)."

{¶ 18} In response, Maciorowski filed a police report. She believed that Hartley posed a "legitimate threat to her personal safety," and she took preventative actions in her personal life, such as installing new security equipment and warning relatives about Hartley. Hartley was charged with three first-degree misdemeanor counts of telecommunications harassment, in violation of R.C. 2917.21(A)(1), (B)(1), and (B)(2), and one fourth-degree misdemeanor count of menacing, in violation of R.C. 2903.22. Hartley pleaded no contest to, and was found guilty of, the menacing count, and the remaining charges were dismissed. He was sentenced to a fully suspended term of 30 days in jail, fined $250 with $200 suspended, and ordered to serve three years of supervised probation with conditions. *See State v. Hartley*, Kettering M.C. No. 21CRB01431.

### F. Disciplinary Hearing

{¶ 19} Prior to Hartley's disciplinary hearing, the parties jointly recommended an indefinite suspension with credit for time served under his interim remedial suspension. But at the hearing, counsel informed the panel that this was no longer the case and relator argued against credit for time served.

{¶ 20} The panel noted that throughout the hearing, it was difficult to obtain clear and definite answers from Hartley and he frequently rambled on and on without directly answering a question. It stated that Hartley had offered alternative explanations for the criminal charges filed against him; had placed blame for his

convictions on the victims of his criminal acts, the courts, or his counsel; and had alleged that some of the charges were merely attempts to hurt him. The panel described Hartley as an "arrogant, trying, taxing, and exasperating" witness. For example, Hartley replied to a question from his counsel with the following observation: "The law is lesser because I'm not a part of it now."

{¶ 21} One topic of discussion at the hearing was the reports of a board-appointed psychiatrist who had independently evaluated Hartley. Although those medical reports were transmitted to this court under seal, at the hearing, Hartley's counsel discussed some of the findings contained in the reports and Hartley described various mental-health conditions he had been diagnosed with. Those conditions include autistic-spectrum disorder, "other specified personality disorder with borderline features," "other specified trauma and stressor-related disorder," and a "history of alcohol use disorder, in apparent remission." Hartley testified that some of these conditions, such as autism, had contributed to his criminal and rule-violating misconduct.

### G. Violations of the Rules of Professional Conduct

{¶ 22} Based on Hartley's conduct, the board found that he committed five violations of Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness)—one each for the misdemeanor convictions to which his misconduct had contributed—and one violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). In accord with *Disciplinary Counsel v. Bricker*, 2013-Ohio-3998, the board determined that the facts underlying the combination of Hartley's misdemeanor convictions and his "threatening, vile, disparaging, vulgar, and demeaning statements" in his Facebook posts about his ex-wife and her attorney were sufficiently egregious to prove the Prof.Cond.R. 8.4(h) violation. We agree with these findings of fact and misconduct.

## II. SANCTION

{¶ 23} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases. We have consistently recognized that "the goal of disciplinary proceedings is not to punish the errant lawyer, but to protect the public." *Toledo Bar Assn. v. Hales*, 2008-Ohio-6201, ¶ 21. And "[w]hile consistency is also a goal, 'we examine each case individually and impose the discipline we believe appropriate based on the unique circumstances of each case.'" *Id.*, quoting *In re Disciplinary Action Against Ruffenach*, 486 N.W.2d 387, 390 (Minn. 1992).

{¶ 24} In terms of aggravating factors, the board found that Hartley had engaged in a pattern of misconduct, committed multiple offenses, and harmed a vulnerable victim of his misconduct. *See* Gov.Bar R. V(13)(B)(3), (4), and (8). In addition, the board found two mitigating factors: the absence of prior discipline and the imposition of other penalties. *See* Gov.Bar R. V(13)(C)(1) and (6). The board found that Hartley's mental-health conditions did not mitigate his misconduct under Gov.Bar R. V(13)(C)(7), because there was no evidence of a sustained period of successful treatment or certification from a qualified professional that Hartley will be able to return to the competent, ethical, and professional practice of law.

{¶ 25} Further, although the board did not find that Hartley has a mental-health, drug-abuse, or alcohol-abuse disorder requiring an impairment suspension under Gov.Bar R. V(15)(C), the board also did not receive any evidence indicating that Hartley is currently fit to engage in the competent, ethical, and professional practice of law.

{¶ 26} The board ultimately determined that an indefinite suspension is the appropriate sanction. In doing so, it relied on five cases: *Columbus Bar Assn. v. Lindner*, 2017-Ohio-4362; *Cleveland Metro. Bar Assn. v. Hurley*, 2015-Ohio-1568;

*Disciplinary Counsel v. LoDico*, 2008-Ohio-2465; *Disciplinary Counsel v. Hiltbrand*, 2006-Ohio-4250; and *Columbus Bar Assn. v. Larkin*, 2011-Ohio-762.

**{¶ 27}** We find *Lindner* particularly instructive here. In *Lindner*, the attorney's convictions arose from five separate incidents over a two-year period. Lindner was charged with domestic violence and assault against her husband for two of those incidents, but she later pleaded guilty to misdemeanor charges of disorderly conduct. Lindner was also convicted of two counts of attempted child endangerment—both second-degree misdemeanors—after her three-year-old daughter was found bicycling outside alone while the temperature was in the twenties and her eight-month-old daughter was found alone and crying uncontrollably in Lindner's home. Finally, Lindner was convicted in two separate vehicular matters: in the first, she was convicted of leaving the scene of an accident and falsification after she allegedly falsely claimed that her car had been stolen several hours before the accident; in the second, she was charged with several additional violations and was convicted of operating a vehicle while under the influence of alcohol or drugs.

**{¶ 28}** The attorney in *Lindner* violated Prof.Cond.R. 8.4(b), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h). The aggravating factors present were a dishonest or selfish motive, a pattern of misconduct, multiple offenses, a lack of cooperation in the disciplinary process, and harm to vulnerable victims. *Id.* at ¶ 10. As for mitigation, Lindner had no prior discipline. *Id.* at ¶ 14. And even though Lindner did not meet the requirements of Gov.Bar R. V(13)(C)(7) to establish her substance-use disorder as a mitigating factor, we recognized that she was debilitated by substance-abuse addiction and her dependence on her abusive husband. *Id.* We ultimately determined that an indefinite suspension was the appropriate sanction. *Id.* at ¶ 19. In doing so, we looked to cases involving attorneys whose untreated

substance-use disorders contributed to their multiple criminal convictions. *Id.* at ¶ 17.

{¶ 29} In this case, we agree with the board that our precedent calls for the imposition of an indefinite suspension. Like the attorney in *Lindner*, Hartley has multiple criminal convictions involving violent disorderly conduct and harm to children. *Lindner* and this case also share the aggravating factors of a pattern of misconduct, multiple offenses, and vulnerable victims as well as the mitigating factor of the absence of prior discipline. And both in *Lindner* and here, issues of substance abuse played a role in the misconduct, although neither attorney was entitled to mitigation under Gov.Bar R. V(13)(C)(7). There is also a familiar temporal aspect between these cases. Both attorneys had a clean track record leading up to the misconduct, but in rapid succession, they committed multiple offenses in a short period of time—two years in *Lindner* and one and a half years here. In *Lindner*, even though the sudden spurt of misconduct was possibly due to substance abuse, mental-health conditions, and other situational factors, we did not believe that the attorney was ready to resume the competent, ethical, and professional practice of law, 2017-Ohio-4362 at ¶ 16, and we found that an indefinite suspension was the appropriate sanction. So too here.

{¶ 30} All in all, Hartley has demonstrated numerous instances of conduct that reflect poorly on the legal profession. He has been convicted of violent acts directed at his family, including his children, and he has publicly made vulgar and demeaning threats to not only his ex-wife but to her attorney as well. When viewed in light of our precedent, these actions, coupled with Hartley's conduct during his disciplinary hearing, warrant an indefinite suspension to "protect the public," *Hales*, 2008-Ohio-6201, at ¶ 21.

{¶ 31} When deciding whether to give Hartley credit for time he served during his November 2021 interim remedial suspension, the board relied on the text of the Rules for the Government of the Bar of Ohio. Gov.Bar R. V(17)(D)(2) states

that disciplinary orders imposing suspensions "may allow full or partial credit for any period of suspension imposed under Sections 14 [(interim default suspension)], 15 [(impairment suspension)], or 18 [(interim felony suspension or default under a child-support order)] of this rule." The rule does not mention interim remedial suspensions, which Gov.Bar R. V(19) provides for. The board invoked the maxim of interpretation "expressio unius est exclusio alterius," meaning that "the expression of one thing is the exclusion of another," *Baltimore Ravens, Inc. v. Self-Insuring Emps. Evaluation Bd.*, 2002-Ohio-1362, ¶ 19, to conclude that there was no basis for awarding Hartley credit for time he had served under his interim remedial suspension.

{¶ 32} We agree that the text of Gov.Bar R. V(17)(D)(2) does not permit an award of credit for time served under Hartley's interim remedial suspension. The plain text of Gov.Bar R. V(17)(D)(2) lists various types of interim suspensions for which credit for time served is allowed, but an interim remedial suspension is not among them. These "circumstances support[] a sensible inference that the term left out must have been meant to be excluded," *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 81 (2002). Therefore, Hartley is not entitled to credit for time served.

{¶ 33} Having reviewed the record and our applicable precedent, we conclude that an indefinite suspension with no credit for time Hartley has served under his interim remedial suspension is the appropriate sanction for his misconduct in this case. We therefore adopt the board's recommendation, including the conditions on Hartley's reinstatement to the practice of law.

### III. CONCLUSION

{¶ 34} Accordingly, Aaron Paul Hartley is indefinitely suspended from the practice of law in Ohio with no credit for time served under his November 1, 2021 interim remedial suspension. His reinstatement to the practice of law is conditioned on (1) an independent psychological or psychiatric evaluation, conducted no more than three months before the filing of a petition for reinstatement, by an

independent qualified healthcare professional agreed upon by the parties, (2) evidence of compliance with any treatment recommendations of the independent qualified healthcare professional, (3) a prognosis from the independent qualified healthcare professional that Hartley will be able to return to the competent, ethical, and professional practice of law, (4) evidence of a sustained period of successful treatment of Hartley's diagnosed conditions as identified in the board's impairment-examination report, and (5) proof of Hartley's compliance with the conditions of probation imposed in the criminal cases cited in Part I of this opinion.  Costs are taxed to Hartley.

Judgment accordingly.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Michelle A. Hall and Matthew A. Kanai, Assistant Disciplinary Counsel, for relator.

Montgomery Jonson, L.L.P., and George D. Jonson, for respondent.

_____