**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Norton*, **Slip Opinion No. 2025-Ohio-5091.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5091

DISCIPLINARY COUNSEL *v.* NORTON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Norton*, Slip Opinion No. 2025-Ohio-5091.]**

*Attorneys—Misconduct—Attorney violated Prof.Cond.R. 8.4(b) and (h) by possessing drugs and criminal tools, which he pleaded guilty to in common-pleas court, and possessing illegal child-abuse material on his cellphone—Two-year suspension with one year conditionally stayed.*

(No. 2024-1723—Submitted March 11, 2025—Decided November 13, 2025.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-047.

_____

The per curiam opinion below was joined by DEWINE, OSOWIK, DETERS, and SHANAHAN, JJ. KENNEDY, C.J., dissented, with an opinion joined by FISCHER and HAWKINS, JJ. THOMAS J. OSOWIK, J., of the Sixth District Court of Appeals, sat for BRUNNER, J.

**Per Curiam.**

{¶ 1} Respondent, Eric Edward Norton, of Cleveland Heights, Ohio, Attorney Registration No. 0071563, was admitted to the practice of law in Ohio in 1999.

{¶ 2} On November 15, 2007, we imposed a conditionally stayed six-month suspension on Norton's license to practice law based on his neglecting two client matters, failing to inform clients that he lacked professional-liability insurance, and failing to cooperate in the ensuing disciplinary investigation. *See Cleveland Bar Assn. v. Norton*, 2007-Ohio-6038, ¶ 2, 11.

{¶ 3} On May 24, 2023, we imposed an interim remedial suspension on Norton under Gov.Bar R. V(19)(B), upon receipt of substantial, credible evidence demonstrating that Norton had committed a violation of the Ohio Rules of Professional Conduct and that he posed a substantial threat of serious harm to the public. *See Disciplinary Counsel v. Norton*, 2023-Ohio-1740, ¶ 2. That suspension remains in effect.

{¶ 4} In a December 2023 complaint, relator, disciplinary counsel, charged Norton with violating two ethical rules arising from an incident in which he attempted to enter the Cuyahoga County Justice Center with illegal drugs in his possession. As a result of that incident, Norton was indicted in the Cuyahoga County Court of Common Pleas on five felony counts. *See State v. Norton*, Cuyahoga C.P. No. CR-23-679867-A (Mar. 29, 2023). After Norton pleaded guilty to two of those charges, the remaining charges were dismissed, and Norton was granted intervention in lieu of conviction. *Norton*, Cuyahoga C.P. No. CR-23-679867-A (Nov. 27, 2023).

{¶ 5} The parties to this case entered into stipulations of fact, misconduct, and aggravating and mitigating factors and submitted 19 stipulated exhibits. Norton submitted ten more exhibits. After conducting a hearing, a three-member

panel of the Board of Professional Conduct issued a report in which it found by clear and convincing evidence that Norton had committed the charged misconduct. The panel recommended that Norton be suspended from the practice of law for two years with one year stayed on conditions related to his continued participation in treatment programs for his diagnosed substance-use disorder. It further recommended that Norton receive no credit for the time he has served under his interim remedial suspension. In addition to the requirements for reinstatement to the practice of law set forth in Gov.Bar R. V(24), the panel recommended that Norton be required to submit a report from his treating addiction counselor certifying that he is capable of returning to the competent, ethical, and professional practice of law. The panel further recommended that upon reinstatement, Norton be required to work for one year with a practice monitor approved by relator. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 6} Norton raises three objections to the board's report and recommendation: he challenges one of the board's findings of fact, its recommended sanction, and its determination that he is not entitled to credit for the time he has served under his interim remedial suspension.

{¶ 7} After independently reviewing the record and our precedent, we overrule Norton's objections and adopt the board's findings of fact and misconduct and its recommended sanction.

## MISCONDUCT

{¶ 8} The stipulated evidence shows that on December 15, 2022, at 7:40 p.m., Norton was at the Cuyahoga County Justice Center to meet with a prospective client who was an inmate in the county jail. As Norton prepared to go through the security checkpoint, he emptied his pockets and placed the contents in a tray. Immediately thereafter, one of the officers on duty saw Norton remove a small plastic baggie containing a white substance from the tray and walk to the men's

restroom in the justice center's atrium. Norton exited the restroom within a minute, went through security, and entered the jail.

{¶ 9} A sheriff's deputy searched the men's restroom in the atrium and located underneath the trash can a plastic baggie containing a white substance. A K-9 unit identified the contents of the baggie as a controlled substance. After being informed of the circumstances, a sergeant ordered that Norton's visit with his prospective client be immediately terminated and that Norton be detained.

{¶ 10} The deputy who detained Norton detected an odor of alcohol on Norton's breath. Although Norton initially denied that he had consumed alcohol, he later admitted that he had been drinking hours earlier. The sergeant who had ordered Norton's detention advised Norton of his *Miranda* rights and seized his cellphone as evidence before permitting him to leave the justice center. The next day, law-enforcement officers obtained a warrant to search Norton's cellphone.

{¶ 11} On December 16, Norton visited a Cuyahoga County assistant prosecutor in her office, and on December 19, he called her. Norton acknowledged during his disciplinary hearing that if that assistant prosecutor were to testify, she would state that Norton admitted to bringing drugs into the justice center and that he explained that the drugs were for his personal use, not for the purpose of smuggling drugs into the jail. Norton also asked the assistant prosecutor to pause the data-extraction process on his cellphone.

{¶ 12} Norton's DNA was on the plastic baggie found in the men's restroom at the justice center and on the cellphone taken from him. And testing confirmed that the baggie contained 5.12 grams of methamphetamine. The parties stipulated and the board found that a forensic analysis of Norton's cellphone revealed two images containing illegal child-abuse material.

{¶ 13} On March 29, 2023, the Cuyahoga County Grand Jury issued a five-count indictment, charging Norton with the following offenses:

(1) illegal use of a minor in nudity-oriented material or a nudity-oriented performance, a second-degree felony, in violation of R.C. 2907.323(A)(1);

(2) drug possession, a third-degree felony, in violation of R.C. 2925.11(A);

(3) illegal conveyance into a detention facility, a third-degree felony, in violation of R.C. 2921.36(A)(2);

(4) tampering with evidence, a third-degree felony, in violation of R.C. 2921.12(A)(1); and

(5) possessing criminal tools, a fifth-degree felony, in violation of R.C. 2923.24(A).

{¶ 14} In November 2023, Norton filed a motion for intervention in lieu of conviction under R.C. 2951.041. The judge referred Norton to the court's psychiatric clinic to determine his eligibility for the program.

{¶ 15} On November 27, 2023, Norton pleaded guilty to two of the five charges against him: drug possession and possessing criminal tools. The prosecutor dismissed the remaining charges. The trial court granted Norton's motion for intervention in lieu of conviction, subject to several conditions, placing him under the supervision of the Cuyahoga County Adult Probation Department. And as part of his guilty plea, Norton forfeited his cellphone.

{¶ 16} During his disciplinary hearing, Norton testified that a drug dealer had sent him the illicit images that were found on his cellphone. He stated that unbeknownst to him, the images were automatically downloaded to his phone through an app that he had used to communicate with the drug dealer. After Norton's criminal case concluded, he provided information about the drug dealer to the Cuyahoga County Prosecutor's Office with the intent to help law-enforcement officers locate the source of the images.

{¶ 17} The parties stipulated, and the board found by clear and convincing evidence, that Norton's conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or

trustworthiness) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). We adopt these findings of misconduct, and we find that Norton's conduct was sufficiently egregious to support a finding that he violated Prof.Cond.R. 8.4(h), *see Disciplinary Counsel v. Bricker*, 2013-Ohio-3998, ¶ 21-22.

## AGGRAVATING AND MITIGATING FACTORS

{¶ 18} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 19} The parties stipulated and the board found that just one aggravating factor is present—Norton's prior discipline. *See* Gov.Bar R. V(13)(B)(1); *see also Norton*, 2007-Ohio-6038. The parties also agreed that four mitigating factors are present, and the board found the same: (1) Norton did not possess a dishonest or selfish motive, (2) he made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, (3) he had other penalties or sanctions imposed for his misconduct, and (4) he presented evidence of other interim rehabilitation, i.e., his participation in both inpatient and outpatient drug-treatment programs. *See* Gov.Bar R. V(13)(C)(2), (4), (6), and (8).

{¶ 20} During his disciplinary hearing, Norton testified that he had a drinking problem that probably dated back to his college days and that around 2018, he started taking Adderall without a prescription to help him focus. He testified that in late 2020, he started using methamphetamine, which initially helped his work performance, gave him energy, and eliminated his interest in alcohol. And he stated that by 2021, he was dependent on the drug and by 2022, he was starting to see problems with his drug use.

{¶ 21} On April 13, 2023, Norton entered into a two-year chemical-dependency contract with the Ohio Lawyers Assistance Program ("OLAP").

Although that contract required Norton to refrain from using mood-altering substances, including alcohol, Norton tested positive for methamphetamine just five days later. He testified that he began using methamphetamines again on December 28, 2023—a little more than one month after the trial court granted his motion for intervention in lieu of conviction—and that he continued doing so until January 3 or 4, 2024. OLAP suspended Norton's contract in February 2024, when he failed to comply with his monitor's order to enter an inpatient rehabilitation program.

{¶ 22} Norton relapsed again in late March 2024 and missed several appointments with his probation officer. He entered an inpatient treatment program in early April, but following his release from that program, he missed two more meetings with his probation officer. In July 2024, he admitted to violating the terms of his release under the intervention-in-lieu-of-conviction program. The trial court continued Norton's release under that program but ordered him to report to his probation officer more frequently and to complete an outpatient treatment program.

{¶ 23} Meanwhile, OLAP reactivated Norton's contract in June 2024, after he completed his inpatient treatment program. But Norton's previously contentious relationship with his OLAP monitor continued to deteriorate: the monitor reported that Norton was not submitting his Alcoholics Anonymous–meeting logs and other documents in a timely manner and that he had not provided proof of his participation in individual counseling sessions.

{¶ 24} On July 20 or 21, 2024, Norton used methamphetamine after receiving some disturbing health news. Consequently, he tested positive for methamphetamines on July 25. In the month that elapsed between Norton's positive drug test and his August 27 disciplinary hearing, he had two negative drug tests. But two weeks before that hearing, Norton's OLAP monitor submitted a report to relator stating that while Norton was attending 12-step-program meetings and weekly OLAP group meetings, he was not in compliance with his OLAP

contract, because he had not provided the monitor with the required meeting logs, a participant questionnaire pertaining to his participation in individual therapy, or a copy of the discharge summary from his inpatient treatment facility.

{¶ 25} Despite his relapse before the disciplinary hearing, Norton argued in his posthearing brief that he had satisfied the requirements of Gov.Bar R. V(13)(C)(7) for his substance-use disorder to be considered as a mitigating factor. Specifically, Norton argued that (1) he had been diagnosed with a substance-use disorder by a qualified chemical-dependency professional, (2) his disorder contributed to cause his misconduct, (3) he had successfully completed an approved treatment program, and (4) he had received a prognosis from a qualified chemical-dependency professional that he would be able to return to the competent, ethical, and professional practice of law under specified conditions.

{¶ 26} The board acknowledged that Norton had presented a letter from his addiction counselor stating that Norton "suffers from Stimulant Use Disorder, Severe," and that he was in "early partial remission." The counselor explained, "Early partial remission is evidenced by none of the criteria for stimulant use disorder being met for at least three months but less than 12 months with the exception that craving, or a strong urge to use the stimulant may exist." The counselor also opined, "Provided Mr. Norton remains sober and sustains a full recovery, I believe he is fully capable of, and I support his return to the competent, ethical and professional practice of law."

{¶ 27} However, in his disciplinary-hearing testimony, Norton admitted that he had asked his addiction counselor to write the letter knowing that he had used illegal drugs and tested positive for drug use in late July 2024 and that he had failed to disclose those facts to her. The board therefore concluded that Norton's evidence failed to satisfy the fourth requirement of Gov.Bar R. V(13)(C)(7) and declined to accord mitigating effect to his substance-use disorder.

**RECOMMENDED SANCTION**

{¶ 28} The board compared this case to two cases in which we imposed partially or fully stayed term suspensions on attorneys with substance-use disorders who engaged in similar acts of misconduct: *Disciplinary Counsel v. Norris*, 1996-Ohio-418, ¶ 5, 8 (attorney suspended for two years with one year stayed, based on his conviction of a misdemeanor cocaine-possession charge), and *Disciplinary Counsel v. Scacchetti*, 2007-Ohio-2713, ¶ 1, 19 (attorney suspended for two years with 18 months conditionally stayed to ensure further treatment and attorney's preparedness for practice, based on his conviction of a fourth-degree felony cocaine-possession charge). The board also compared this case to one involving an attorney who did not have a substance-use disorder but whose ethics violation involved a criminal sanction: *Cleveland Metro. Bar Assn. v. Strauss*, 2021-Ohio-1263, ¶ 1, 16, 18 (attorney who did not have a substance-use disorder suspended for one-year, conditionally stayed, based on his conviction of operating a vehicle while intoxicated, leaving the scene of an accident, and unsafe operation of a vehicle).

{¶ 29} Recognizing that Norton admitted to using methamphetamines three times in the 12 months preceding his disciplinary hearing and that he has had difficulties complying with his OLAP contract, the board recommends that Norton be suspended from the practice of law for two years with one year stayed on the conditions that he (1) remain in compliance with the terms of his April 13, 2023 OLAP contract and any recommended extension thereof, (2) submit to random drug and alcohol testing through OLAP, and (3) remain in compliance with all court orders related to or arising from his criminal case.

{¶ 30} In addition to the requirements for reinstatement to the practice of law set forth in Gov.Bar R. V(24), the board recommends that Norton be required to submit a report from his treating addiction counselor certifying that he is able to return to the competent, ethical, and professional practice of law. The board further

recommends that upon reinstatement, Norton be required to serve a one-year period of monitored probation with a practice monitor approved by relator. And relying on our pronouncement that "[t]he plain text of Gov.Bar R. V(17)(D)(2) lists various types of interim suspensions for which credit for time served is allowed, but an interim remedial suspension is not among them," *Disciplinary Counsel v. Harvey*, 2024-Ohio-5232, ¶ 32, the board recommends that Norton receive no credit for the time he has served under his interim remedial suspension.

## NORTON'S OBJECTIONS TO
## THE BOARD'S REPORT AND RECOMMENDATION

{¶ 31} Norton raises three objections to the board's report and recommendation, which for ease of discussion will be addressed out of order.

### *The record supports the board's finding that forensic analysis of Norton's cellphone revealed two images containing "illegal child-abuse material"*

{¶ 32} In his third objection to the board's report and recommendation, Norton challenges the board's finding that a forensic analysis of his cellphone revealed two images containing "illegal child abuse material." He contends that the board's finding is "factually unsupported," and he accuses the board of "mischaracterizing" the facts in an attempt to convince this court to judge his misconduct more harshly than it would without that finding.

{¶ 33} Norton asserts that the State dismissed the charge related to the images found on his cellphone because he "did not affirmatively take any step to save the images to his phone and was not even aware they had been auto downloaded into an apps folder." He therefore asks this court to strike the finding regarding "illegal child abuse material" from the board's report—and presumably not include it in our decision.

{¶ 34} Although the disputed images are not part of the record in this case, we find that Norton stipulated to the authenticity and admissibility of the February 15, 2023 report of the Ohio Internet Crimes Against Children Task Force ("ICAC

task force") regarding the forensic analysis of his cellphone. That report states that the FBI provided a mobile-device-extraction report to the Cuyahoga County Prosecutor's Office and that while viewing that report, the prosecutors "observed one file of child exploitation material."

{¶ 35} The prosectors informed the commander of the ICAC task force of that finding. The task-force commander reviewed the file in question and "determined that it depicted a ███ minor female child seen standing in a state of nudity with her breasts and genitals exposed." (Redaction in original.) The report states that on further analysis of data extracted from Norton's cellphone, the commander "located two (2) files which he categorized as Child Abuse Material (CAM) – Illegal." The first file contained the image identified in the mobile-device-extraction report. The other was an eight-second video depicting the same "minor female child," the actions of whom the commander described in some detail. Accordingly, the record supports the board's finding that a forensic examination of Norton's cellphone revealed two images containing "illegal child-abuse material."

{¶ 36} Although Norton entered into a plea bargain with the prosecutor that resulted in the State's dismissal of the charge alleging illegal use of a minor in nudity-oriented material or a nudity-oriented performance in violation of R.C. 2907.323(A)(1), the presence of those images on Norton's cellphone was alleged in relator's certified disciplinary complaint.[1] The presence of those images is relevant here because it gives context to the range of criminal charges that were leveled against Norton and to the substantial threat of serious harm that he poses to

---

1. R.C. 2907.323(A)(1) prohibits a person from "[p]hotograph[ing] any minor or impaired person who is not the person's child or ward in a state of nudity, or creat[ing], direct[ing], produc[ing], or transfer[ring] any material or performance that shows the minor or impaired person in a state of nudity" in the absence of a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose and without written consent of the depicted child or ward's parent, guardian, or custodian.

the public, which precipitated this court's issuance of an order of interim remedial suspension preventing Norton from practicing law during the pendency of his criminal case and these disciplinary proceedings. And Norton's possession of those images may have provided some support for the board's finding that Norton engaged in an illegal act that adversely reflects on his trustworthiness in violation of Prof.Cond.R. 8.4(b) or its finding that he engaged in conduct that adversely reflects on his fitness to practice law in violation of Prof.Cond.R. 8.4(h).

{¶ 37} On these facts, we overrule Norton's third objection to the board's report and recommendation.

### *The appropriate sanction for Norton's misconduct is a two-year suspension with one year conditionally stayed*

{¶ 38} In his first objection to the board's report and recommendation, Norton argues that the appropriate sanction for his misconduct is a fully stayed suspension. In support of that sanction, Norton notes that he has been subject to "other severe sanctions," including the May 2023 interim remedial suspension that this court imposed in relation to this case, *see Norton*, 2023-Ohio-1740, at ¶ 1-2, which he characterizes as "an unusually long actual suspension for his misconduct." He contends that requiring him to serve additional time out of the practice of law would serve no purpose and that our decisions in *Disciplinary Counsel v. Casalinuovo*, 66 Ohio St.3d 367 (1993), *Disciplinary Counsel v. May*, 2005-Ohio-5320, and *Stark Cty. Bar Assn. v. Kelley*, 2021-Ohio-770, support the imposition of a fully stayed suspension here.

{¶ 39} In addition, Norton asserts that despite several relapses, he successfully completed his intervention-in-lieu-of-conviction program and that the criminal charges against him were dismissed on December 12, 2024—several months after his disciplinary hearing. Although he filed a motion to supplement the record with evidence to establish that fact one day before the board submitted its report to this court, the board did not rule on that motion. Norton urges us to

remand this case to the board with instructions for it to grant the motion and allow him to supplement the record with documentation of that success.

{¶ 40} Remand would further delay these proceedings. And evidence that Norton successfully completed his intervention-in-lieu-of-conviction program would, at most, demonstrate that he completed an intensive outpatient treatment program, that he remained drug free for several months *after* his July 25 relapse, and that the trial court dismissed the criminal charges against him. While Norton's completion of the intervention-in-lieu-of-conviction program is a positive development, that fact alone is insufficient to persuade us that he is presently capable of returning to the competent, ethical, and professional practice of law.

{¶ 41} Furthermore, this case is readily distinguishable from *Casalinuovo*, *May*, and *Kelley* for several reasons, including that the attorneys in each of those cases established a sustained period of sobriety and had no prior disciplinary violations.

{¶ 42} In *May*, the attorney pleaded guilty to two fifth-degree felony counts of obtaining a dangerous drug through deception by presenting forged prescriptions for Vicodin to a pharmacy. He successfully completed a treatment-in-lieu-of-conviction program, abstaining from drugs and alcohol for a year before the criminal charges against him were dismissed. In contrast to Norton, May successfully established his diagnosed chemical dependency as a mitigating factor by presenting evidence showing that his chemical dependency contributed to cause his misconduct, that he had successfully completed an approved treatment program, and that he was capable of providing ethical and professional service to his clients. *May*, 2005-Ohio-5320, at ¶ 8. We imposed a conditionally stayed two-year suspension for his misconduct. *Id.* at ¶ 11.

{¶ 43} In *Casalinuovo*, the attorney committed two ethical violations arising from his indictment on a single fourth-degree felony drug charge. He had already commenced a drug-abuse rehabilitation program when he entered a no-

13

contest plea to that criminal charge and was offered treatment in lieu of conviction. More than a year later, he successfully completed that program, and the trial court dismissed the indictment. In contrast to this case, our decision in *Casalinuovo* does not mention any relapses. Moreover, there was no evidence that Casalinuovo's drug use affected his clients or his legal practice, whereas Norton admitted that he drank alcohol before going to visit his incarcerated prospective client in December 2022 and that his substance abuse negatively affected his practice. We imposed a two-year, conditionally stayed suspension for Casalinuovo's misconduct and required him to serve a two-year period of monitored probation. *Casalinuovo*, 66 Ohio St.3d at 369.

{¶ 44} In *Kelley*, 2021-Ohio-770, the attorney admitted that as a result of his substance-abuse and mental-health issues, which resulted in his admission to an inpatient mental-health and chemical-dependency facility, he abandoned 15 clients. And he stipulated to multiple ethical violations arising from that conduct. Although Kelley had several substance-use relapses while working with OLAP, by the time of his disciplinary hearing, he was in compliance with his OLAP contract, having completed 11 weeks of a 12-week outpatient treatment program and having abstained from all mind-altering drugs, including alcohol, for 11 months. By comparison, Norton was not in compliance with his OLAP contract at the time of his disciplinary hearing and he relapsed just a month before the hearing.

{¶ 45} In addition, Kelley's chemical-dependency counselor opined that he could return to the practice law, provided that he continued to follow treatment recommendations and remained in compliance with his OLAP contract. While Norton's addiction counselor also submitted a favorable report on Norton's behalf, Norton failed to disclose his July 2024 relapse to her before she prepared that report. We therefore conclude that the conditionally stayed two-year suspension that we imposed on the attorney in *Kelley*, *id.* at ¶ 19, is not appropriate in this case.

**{¶ 46}** We find two of the cases considered by the board—*Norris*, 1996-Ohio-418, and *Scacchetti*, 2007-Ohio-2713—to be most instructive.

**{¶ 47}** In *Norris*, the attorney pleaded guilty and was convicted of a federal misdemeanor count of cocaine possession while serving as a county prosecutor. No aggravating factors were noted. As for mitigating factors, Norris resigned as prosecutor, regularly attended rehabilitation meetings, participated in OLAP, did not test positive for illegal drugs in the six months preceding his disciplinary hearing, and presented testimony from multiple witnesses regarding his commitment to rehabilitation. *Norris* at ¶ 3. We suspended Norris from the practice of law for two years with one year stayed on conditions that were imposed to ensure his continued compliance with his drug-treatment program. *Id.* at ¶ 8.

**{¶ 48}** In *Scacchetti*, the attorney pleaded guilty to a fourth-degree felony count of possession of cocaine, and like Norton, Scacchetti participated in an intervention-in-lieu-of-conviction program. He completed a three-year period of rehabilitation under that program, which included a period of intensive outpatient treatment, 112 days of inpatient treatment, compliance with a four-year OLAP contract, and daily check-ins with his OLAP monitor. Although Scacchetti voluntarily closed his law practice within two weeks of his arrest, the judge presiding over his criminal case also required him to change his attorney registration to inactive for a period of two years.

**{¶ 49}** Compared to Norton's multiple relapses here, Scacchetti suffered a single relapse and tested positive for cocaine approximately eight months into his drug-treatment program. Consequently, the trial-court judge ordered Scacchetti to serve one week in jail and enter a transitional housing program to support his recovery. Scacchetti's one-time relapse occurred three months before his disciplinary hearing, at which he testified that he had learned valuable lessons about his recovery from that relapse.

**{¶ 50}** No aggravating factors were identified in *Scacchetti*, but mitigating factors consisted of Scacchetti's clean disciplinary record, his lack of a dishonest or selfish motive, his cooperation in the disciplinary proceedings, and the imposition of other sanctions for his misconduct. *Scacchetti*, 2007-Ohio-2713, at ¶ 16. The parties stipulated that a conditionally stayed two-year suspension was appropriate for Scacchetti's misconduct, *id.*, but the board and this court found that a two-year suspension with 18 months conditionally stayed was the appropriate sanction to facilitate Scacchetti's recovery and ensure his return to the competent, ethical, and professional practice of law, *id.* at ¶ 17-19.

**{¶ 51}** In this case, Norton does not appear to fully appreciate the severity of his substance-use disorder. His OLAP contract was temporarily suspended for several months because of his failure to attend an inpatient treatment program, and even though that contract was reinstated, Norton was not in compliance with that contract at the time of his disciplinary hearing. Although Norton testified that his addiction counselor got him into a 60-day inpatient treatment program, he did not think he needed a program that lasted that long. Instead of enrolling in the 60-day program recommended by his counselor, Norton took advantage of the fact that OLAP had not specified a required length for his inpatient treatment and "shopped around" for a 30-day program. Despite completing that program, Norton suffered three drug relapses in the nine months preceding his disciplinary hearing, with the last one occurring just one month before the hearing.

**{¶ 52}** Additionally, in contrast to the attorneys in *Norris* and *Scacchetti*, Norton has been previously disciplined. *Compare Norris*, 1996-Ohio-418, and *Scacchetti* at ¶ 16, *with Norton*, 2007-Ohio-6038, at ¶ 25. He also engaged in dishonest conduct by withholding information about his July 2024 relapse from his addiction counselor when he asked her to prepare a report for submission as evidence in these disciplinary proceedings. And Norton's explanation that his July 2024 relapse occurred after he received some disturbing health news does not

16

inspire confidence that he has gained the necessary tools to remain sober as he confronts the everyday stresses attendant to the practice of law.

{¶ 53} On these facts, we have serious concerns about Norton's ability to achieve and maintain his sobriety. We therefore overrule Norton's first objection and conclude that a two-year suspension with one year stayed on the conditions recommended by the board is the appropriate sanction for Norton's misconduct.

*Norton is not entitled to credit for time served under his interim remedial suspension*

{¶ 54} In his second objection to the board's report and recommendation, Norton contends that despite our recent pronouncement that the plain language of Gov.Bar R. V(17)(D)(2) does not permit the award of credit for time served under an interim remedial suspension, *see Hartley*, 2024-Ohio-5232, at ¶ 32, he should nonetheless receive credit for the time he has served under the interim remedial suspension we imposed on his license to practice law, *see Norton*, 2023-Ohio-1740, at ¶ 2, for two reasons. First, Norton contends that because we have previously awarded credit for time served under interim suspensions when credit was not specifically authorized by rule, we should do so in this case. And second, Norton contends that denying him credit for time served will deprive him of due process and equal protection of the law because there is no rational basis for treating him "worse than his similarly situated peers." These arguments are unavailing.

{¶ 55} In the past, this court has granted attorneys credit for time served under interim suspensions—including time served under interim remedial suspensions—even though our rules did not expressly authorize those credits when they were issued. For example, in *Cleveland Metro. Bar Assn. v. Austin*, 2019-Ohio-3325, ¶ 27, and *Mahoning Cty. Bar Assn. v. Marrelli*, 2015-Ohio-4614, ¶ 6-7, we granted attorneys credit for time served under interim default suspensions, though when we decided those cases, Gov.Bar R. V(17)(D)(2) authorized credit only for time served under interim felony and child-support suspensions imposed

under Gov.Bar R. V(18). *See* Gov.Bar R. V(17)(D)(2), 159 Ohio St.3d XCIX (effective Nov. 1, 2020) (adding interim default and impairment suspensions imposed under Gov.Bar R. V(14) and (15) to the types of suspensions for which credit for time served may be granted). And we once awarded credit for time served under an interim remedial suspension to an attorney who neglected multiple client matters, engaged in conduct that was prejudicial to the administration of justice and that adversely reflected on his fitness to practice law, and failed to maintain a respectful attitude toward the court. *See Disciplinary Counsel v. Brown*, 2000-Ohio-82, ¶ 4-7, 12. However, each of those cases predates our pronouncement in *Hartley* that credit for time served is proper only for the types of suspensions expressly identified in Gov.Bar R. V(17)(D)(2). Our determination in *Hartley* has foreclosed our discretion to award Norton credit for the time he has served under the interim remedial suspension.

{¶ 56} Norton claims that denying him credit for the time he has served under his interim remedial suspension would deprive him of due process and equal protection of the law. He presents his constitutional claims as as-applied challenges to our application of *Hartley*, and to our interpretation of Gov.Bar R. V(17)(D)(2) in *Hartley*, to the facts of this case. These arguments are likewise unavailing.

{¶ 57} To prevail on a constitutional challenge to a statute or rule as applied to a particular set of facts, the challenger must present clear and convincing evidence of the constitutional defect. *See State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 2006-Ohio-5512, ¶ 21, citing *Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329 (1944), paragraph six of the syllabus.

{¶ 58} In his objections, Norton asserts that "denying [him] credit for time served given the facts of the case would violate his due process rights because there is no rational basis for treating him worse than [his] similarly situated peers." He later filed a notice of additional authorities pursuant to S.Ct.Prac.R. 17.08, stating his intention to rely on the Fourteenth Amendment to the United States

Constitution, four decisions from the United States Supreme Court, and one decision from this court in support of his constitutional argument. At oral argument, however, he offered little more than the same conclusory argument advanced in his objections.

{¶ 59} The Equal Protection Clause of the Fourteenth Amendment "prohibits treating similar groups differently based on criteria that are unrelated to the purpose of the law." *State v. Noling*, 2016-Ohio-8252, ¶ 13. But the only similarity that Norton has identified between his case and *Austin*, *Marrelli*, and *Brown*, is that like we did here for Norton, in each of those cases, we imposed an interim suspension on the attorneys' license to practice law. We imposed interim default suspensions on Austin and Marrelli after they failed to answer disciplinary complaints filed against them and then failed to respond to the show-cause orders issued by this court. *See Austin*, 2019-Ohio-3325, at ¶ 2; *Marrelli*, 2015-Ohio-4614, at ¶ 2 and fn. 2. But both Austin and Marrelli eventually participated in the disciplinary proceedings, thereby remedying the conditions that led to the imposition of their interim default suspensions. *See Austin* at ¶ 2; *Marrelli* at ¶ 2.

{¶ 60} It is unclear from our decision in *Brown*, 2000-Ohio-82, or our suspension order, *see Disciplinary Counsel v. Brown*, 87 Ohio St.3d 1427 (1999), which facts gave rise to our imposition of an interim remedial suspension in that case. However, we noted in our decision that Brown "was found not to be suffering from mental illness," *Brown*, 2000-Ohio-82, at ¶ 2, and that there was no suggestion that Brown suffered from any substance-use disorder as Norton does in this case. Rather, our decision in *Brown* suggests that Brown's interim remedial suspension was related to his failure to respond to complaints filed in two previous disciplinary actions in 1997 and 1998 and to an amended complaint filed between May and October 1999. *See id*. at ¶ 2-3.

{¶ 61} Here, by comparison, we imposed an interim remedial suspension on Norton after receiving substantial, credible evidence demonstrating that he had

violated the Rules of Professional Conduct and that his methamphetamine use and related indictment on drug charges posed a substantial threat of serious harm to the public. While Norton represents that the criminal charges related to his drug use have been resolved, the evidence shows that Norton's drug use continues to pose a substantial threat of serious harm to the public. Simply stated, Norton has not demonstrated that he is similarly situated to the attorneys who were disciplined in *Austin*, *Marrelli*, or *Brown*. Norton has therefore failed to carry his burden of demonstrating by clear and convincing evidence that our application of Gov.Bar R. V(17)(D)(2) has resulted in his being treated differently than his similarly situated peers.

{¶ 62} Also without merit is Norton's claim that the board's failure to recommend that he be credited for time he has served under our interim-remedial-suspension order—and our refusal to grant that credit—somehow deprived him of due process of law. We have previously explained the due-process rights afforded to respondents in disciplinary cases:

> The boundaries of due process for attorney-discipline proceedings are different from those in civil or criminal proceedings. *In re Judicial Campaign Complaint Against Carr*, 76 Ohio St.3d 320, 322, 667 N.E.2d 956 (1996). A disciplinary respondent's due-process rights have been adequately protected as long as the respondent has been "afforded a hearing, the right to issue subpoenas and depose witnesses, and an opportunity for preparation to explain the circumstances surrounding his actions. *Disciplinary Counsel v. Character*, 129 Ohio St.3d 60, 2011-Ohio-2902, 950 N.E.2d 177, ¶ 76.

*Disciplinary Counsel v. Tamburrino*, 2016-Ohio-8014, ¶ 21.

{¶ 63} Here, Norton has received all the process he is due. In addition, Norton requested and the panel chair granted a 90-day continuance of the disciplinary hearing to permit Norton to complete his inpatient drug-treatment program and establish a lengthier record of postdischarge sobriety. The panel also granted his motions to extend the time for filing posthearing briefs and to hold the record open until October 28, 2024, so he could submit additional mitigating evidence. And after Norton missed the deadline for filing his posthearing brief, the panel allowed him to file his brief out of time.

{¶ 64} Based on the foregoing, we overrule Norton's second objection and find that he is not eligible to receive credit for the time he has served under the interim remedial suspension that we imposed on May 24, 2023. Having overruled each of Norton's objections, we adopt the board's findings of fact, conclusions of law, and recommended sanction.

## CONCLUSION

{¶ 65} Eric Edward Norton is suspended from the practice of law in Ohio for two years with one year stayed on the conditions that he (1) remain in compliance with the terms of the OLAP contract he originally entered on April 13, 2023, and any recommended extension thereof, (2) submit to random drug and alcohol testing through OLAP, and (3) remain in compliance with all court orders related to or arising from his criminal case, Cuyahoga C.P. No. CR-23-679867-A. If Norton fails to comply with the conditions of the stay, the stay will be lifted and he will serve the entire two-year suspension.

{¶ 66} In addition to the requirements for reinstatement set forth in Gov.Bar R. V(24), Norton shall be required to submit a report from his treating addiction counselor certifying that he is able to return to the competent, ethical, and professional practice of law. And upon reinstatement, Norton shall serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21), with the practice monitor to be approved by relator. Costs are taxed to Norton.

Judgment accordingly.

_____

**KENNEDY, C.J., joined by FISCHER and HAWKINS, JJ., dissenting.**

{¶ 67} If the misconduct committed by respondent, Eric Edward Norton, involved solely his commission of drug-related offenses, a suspension from the practice of law in Ohio for two years with one year stayed might be an appropriate sanction. That is how the majority treats this matter, which is why the cases it reviews concern attorneys whose misconduct involved drug abuse and therefore support the imposition of a partially stayed term suspension.

{¶ 68} However, Norton's misconduct involved an added element that made it more egregious than just his commission of drug-related offenses. His cellphone had child pornography on it, and we have consistently imposed an indefinite suspension when an attorney's misconduct involved child pornography. Consequently, considering all of Norton's misconduct, I would suspend him from the practice of law indefinitely, with no credit for time served under his interim remedial suspension. Because the court does otherwise, I dissent.

{¶ 69} Norton was indicted in the Cuyahoga County Court of Common Pleas for drug-related offenses as well as one count of the illegal use of a minor in nudity-oriented material or a nudity-oriented performance, a second-degree felony in violation of R.C. 2907.323(A)(1). The latter charge stemmed from law enforcement's search of Norton's cellphone, which revealed two files containing child pornography, including a depiction of a female minor with breasts and genitals exposed. In his disciplinary case, Norton stipulated and the Board of Professional Conduct found that illegal child-abuse material had been discovered on Norton's cellphone.

{¶ 70} I recognize that the count related to child pornography was dismissed by the prosecutor as part of a plea agreement in which Norton pleaded guilty to two drug-related offenses. "However, in disciplining an attorney for

misconduct that also constitutes a criminal offense, we are not limited to considering the charges brought for a particular crime; rather, we must also examine the conduct underlying the offense." *Disciplinary Counsel v. Goodman*, 2024-Ohio-852, ¶ 24. Since the misconduct related to the two child-pornography depictions found on Norton's cellphone was alleged by relator, disciplinary counsel, in the disciplinary complaint and has been litigated before the board and this court, it should be fully considered in determining the appropriate sanction for Norton's misconduct.

**{¶ 71}** We stated in *Disciplinary Counsel v. Martyniuk* that "[a]n indefinite suspension with no credit for the time served under an interim felony suspension is often the appropriate sanction for an attorney who has engaged in sexually motivated conduct involving children," and that includes misconduct involving child pornography. 2017-Ohio-4329, ¶ 10. In that case, we imposed an indefinite suspension with no credit for time served under an interim felony suspension on an attorney who was convicted of 20 fourth-degree felony counts of pandering sexually oriented material involving a minor. *Id.* at ¶ 3, 11.

**{¶ 72}** Similarly, we indefinitely suspended the attorney in *Dayton Bar Assn. v. Greenberg* with no credit for time served under his interim felony suspension, based on his convictions for possessing child pornography and transferring obscene material to minors. 2013-Ohio-1723, ¶ 4-5. And we imposed the same sanction in *Disciplinary Counsel v. Butler* on an attorney who was convicted of 10 counts of pandering sexually oriented material involving a minor. 2011-Ohio-236, ¶ 1, 5. More recently, we indefinitely suspended an attorney who possessed child pornography, and we gave him no credit for the time he served under an interim felony suspension. *Disciplinary Counsel v. Connors*, 2020-Ohio-3339, ¶ 5, 14. *But see Disciplinary Counsel v. Ridenbaugh,* 2009-Ohio-4091, ¶ 2, 40-41 (imposing an indefinite suspension with credit for time served under an

interim-felony suspension on an attorney whose misconduct involved acts of voyeurism and use of child pornography).

{¶ 73} We have found an indefinite suspension with no credit for time served under an interim felony suspension to be appropriate even when the attorney possessed only a few depictions of child pornography. In *Dayton Bar Assn. v. Ballato*, we imposed that sanction on an attorney who possessed three child-pornography images on his office computer. 2014-Ohio-5063, ¶ 5, 30.

{¶ 74} Following this precedent, Norton should be indefinitely suspended from the practice of law based on the combination of his possession of child pornography *and* his drug-related offenses.

{¶ 75} Credit for time served under an interim remedial suspension is not available to Norton. Gov.Bar R. V provides for "various types of interim suspensions for which credit for time served is allowed, but an interim remedial suspension is not among them." *Disciplinary Counsel v. Hartley*, 2024-Ohio-5232, ¶ 32. And while I acknowledge Norton's arguments that denying him credit for time served under his interim remedial suspension would deprive him of due process and equal protection, I agree with the majority that his arguments are conclusory and underdeveloped. Not only that but, as noted above, we have consistently denied credit for time served under an interim felony suspension to attorneys who committed misconduct like Norton's; so as applied to him, the denial of credit is not arbitrary.

{¶ 76} In any case, Norton would not be entitled to credit for time served under his interim remedial suspension even if it were an option, because his drug addiction meant that his practice of law posed a substantial threat of harm to the public throughout his period of suspension. *See* Gov.Bar R. V(19). In April 2023, Norton entered into a two-year chemical-dependency contract with the Ohio Lawyers Assistance Program ("OLAP") yet tested positive for drugs five days later. During his interim remedial suspension, which began in May 2023, *see*

*Disciplinary Counsel v. Norton*, 2023-Ohio-1740, he relapsed *at least* three times—in December 2023, March 2024, and July 2024. At the time of his disciplinary hearing in August 2024, he had maintained barely a month of sobriety, even though his license to practice law was on the line.

{¶ 77} But it is not just the fact that Norton relapsed that leads me to conclude that he should not receive credit for time served under his interim remedial suspension. I realize that recovery is a difficult journey; however, Norton struggled to take the necessary steps to even try to maintain his sobriety. He initially refused inpatient treatment as ordered by his OLAP monitor, and even after engaging in inpatient and outpatient treatment, he failed to consistently document his attendance at recovery meetings. And while he also worked with a drug-abuse counselor, he failed to reveal his last relapse to her so that she could help him move forward in his recovery. Giving Norton credit for time served under his interim remedial suspension would make him eligible to apply for reinstatement to the practice of law at a time when his commitment to maintaining his sobriety and his ability to maintain it remain in question.

{¶ 78} For these reasons, I would suspend Norton from the practice of law in Ohio indefinitely with no credit for the time he has served under his interim remedial suspension. Because the majority does otherwise, I dissent.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Ryan N. Sander, Assistant Disciplinary Counsel, for relator.

Eric Edward Norton, pro se.

_____